## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

| | |
|---|---|
| BLAIR HARRIS, | |
| Plaintiff, | |
| vs. | Case No. |
| INTECH INNOVATION HOLDINGS, INC., a Florida corporation; JAMES F. MARSHALL II, an individual also known as SKIP MARSHALL; and CHARLES ANTHONY GRIESS, an individual also known as CHUCK GRIESS, | |
| Defendants. | |

### <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff BLAIR HARRIS, by and through his undersigned counsel and for his Complaint in this, hereby alleges as follows:

### <u>PARTIES</u>

1.     Plaintiff BLAIR HARRIS ("Plaintiff") resides in the County of Los Angeles, California.

2.     Defendant INTECH INNOVATION HOLDINGS, INC. ("Intech Innovation Inc.") is a Florida corporation with its principal place of business located in this Judicial District at 1936 Bruce B. Downs Blvd., Suite 427, Wesley Chapel, Florida 33543.

3.     Defendant JAMES F. MARSHALL II, also known as SKIP MARSHALL II ("Marshall") is an individual residing in this Judicial District.  Marshall is the Chief Executive Officer of Intech Innovation Inc.

4.      Defendant CHARLES ANTHONY GRIESS, also known as CHUCK GRIESS ("Griess") is an individual residing in this Judicial District.  Griess is the Chief Technology Officer of Intech Innovation Inc.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction) because the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.  Plaintiff is a citizen of California and all Defendants are citizens of Florida.

6.      Venue is proper in this District because the Defendants reside in this District.  28 *U.S.C. §1391(b)(1)*.

## FACTUAL ALLEGATIONS

7.      Plaintiff is a 57-year old, sophisticated professional living in Los Angeles.  Prior to the events giving rise to this dispute, Plaintiff had spent decades holding managerial and executive roles in various industries. Plaintiff has extensive experience in the areas of business startups, strategic leadership, and building self-sustaining, high-performing work teams through periods of business expansion.

8.      Plaintiff first met Defendants Marshall and Griess in 2002 when Plaintiff hired them as part of Plaintiff's employment for a large insurance company.  Although Marshall and Griess ultimately moved on to other job opportunities, Plaintiff remained in contact with them over the years.

9.      Plaintiff met Defendant Marshall for dinner in the February/March 2019 timeframe. During the meeting Marshall mentioned that he was planning to start his own technical services and consulting company – called "Intech Ideas" – with Defendant Griess.  According to Marshall, the company would provide technology solutions, knowledge, expertise, resources, and support predominantly for the human resources industry.  Marshall told Plaintiff that he and Griess already had established Intech Innovation Inc. in 2017 but were still getting the idea off the ground.

10.    At the time of the dinner, Plaintiff was the President of a large precious metals company, where he was earning $250,000.00 a year.  But Plaintiff was intrigued by Marshall's concept and the two of them lightly discussed the idea of working together.

11.    Plaintiff left his job in April 2019, at which time he contacted Marshall to discuss becoming a partner in the Intech Ideas business venture.  Marshall and Griess ultimately agreed to partner with Plaintiff, with all three of them being owners of  Intech Innovation Inc. .

12.    Plaintiff began working on behalf of Intech Innovation Inc. in mid-June 2019.  As was the case throughout Plaintiff's time with the Defendants, he was not paid for his labor through an hourly wage, salary, or other monetary compensation.  And, despite routinely working more than eight hours in a single workday and more than 40 hours in a given week, he was not paid overtime.

13.    In approximately August 2019, Marshall prepared a proforma that outlined the salaries the Intech Innovation Inc. executive staff would receive once the company began generating profits, as well as the anticipated salaries of other team members who would eventually be hired.  A copy of the proforma is attached as **Exhibit** "**A**."  The document provided that, as Chief Executive Officer, Marshall would receive an annual salary of $150,000.00, while Plaintiff (as  Chief Operating Officer) and Griess (as  Chief Technology Officer) would each receive annual salaries of $125,000.00.  While Griess did begin receiving his salary in approximately November 2019, the three of them agreed that Plaintiff and Marshall would not receive a salary until the company began generating profits.

14.    In October 2019, after working for Intech Innovation Inc. for four months without any monetary compensation, Plaintiff began pushing Marshall to finalize a written shareholder agreement that would memorialize Plaintiff's ownership stake in Intech Innovation Inc.  Marshall was receptive to the idea, and the two of them met on October 30, 2019, to discuss terms.

15.    During the October 30 meeting, Marshall offered Plaintiff a 10% equity interest in Intech Innovation Inc., with Marshall retaining a 51% ownership stake and Griess receiving a 15%

interest.[1]  Plaintiff resisted this proposal (both orally and in writing), as he had always believed he and Marshall would be equal owners.  Although Marshall acknowledged to Plaintiff that he should have been clearer at the onset that he would be retaining the majority ownership in the business, Marshall told Plaintiff the proposal was non-negotiable.  Not wanting the four months of work Plaintiff already had put into the company to go to waste, Plaintiff agreed to the 10% equity arrangement.  Marshall promised to provide Plaintiff with a written shareholder agreement that would document Plaintiff's 10% ownership interest in Intech Innovation Inc.  Thus, Marshall, Griess, and Plaintiff had reached a binding agreement, whereby Plaintiff would receive a 10% equity stake in Intech Innovation Inc. plus a salary of $125,000.00, to be paid once the company began generating profits ("the Agreement").

16.     Marshall failed to provide the promised shareholder agreement after the October 30 meeting.  Plaintiff, however, continued to diligently work on Intech Innovation Inc.'s behalf.

17.     As months passed, Plaintiff continued to follow up with Marshall about the lack of a written shareholder agreement.  The two of them participated in a Zoom videoconference call on December 16, 2019.  During this videoconference call, Marshall advised Plaintiff that he was planning to form a second entity – Intech Ideas LLC – which would be funded through an outside investor.  Marshall told Plaintiff that Intech Innovation Inc. would fully own the Intech Ideas LLC subsidiary and that Plaintiff thus would have partial ownership in Intech Ideas LLC, equal to his 10% ownership in Intech Innovation Inc.

18.     During the December 16 videoconference, Marshall shared his screen in order to show Plaintiff a document that Marshall had prepared in his own handwriting that was intended to show the ownership structure of Intech Innovation Inc. and the Intech Ideas LLC subsidiary.  The document explicitly confirmed the Agreement that Plaintiff would receive a 10% ownership stake in Intech Innovation Inc. (representing 13,333 of the then-issued shares of Intech Innovation Inc.). Plaintiff used his phone to take a photograph of the computer screen (with Marshall's consent),

---

[1]  Marshall indicated he wanted to set aside the remaining 24% equity for potential future investors, although Plaintiff would also own 10% of these unallocated shares.

clearly showing this document as being shared by Defendant Marshall.  A true and correct copy of the photograph Plaintiff took of this document is attached as **Exhibit** "**B**."

19.    But, despite Plaintiff's repeated requests, following the videoconference Marshall failed to provide a written shareholder agreement for Plaintiff to sign.  Plaintiff, however, trusted Marshall and Griess to honor the Agreement, and he continued to work nearly non-stop on behalf of Intech Innovation Inc.

20.    In mid-February 2020, Plaintiff told Marshall that Plaintiff needed to stop working solely for equity and instead begin working for his salary plus his 10% equity stake.  Plaintiff and Marshall thus agreed that, once Intech Innovation Inc. began turning a profit, Plaintiff would receive his $125,000.00 salary retroactive to February 1, 2020.

21.    Marshall finally emailed Plaintiff what Marshall claimed to be a proposed shareholder agreement on February 28, 2020.  But, when Plaintiff opened the document, he realized it was a copy of a shareholder agreement relating to Defendant Griess and not Plaintiff ("Griess agreement"). In fact the document did not reference Plaintiff in any respect.  Making matters more concerning, an exhibit attached to the Griess agreement listed only Griess and Marshall as shareholders in Intech Innovation Inc. – not Plaintiff.

22.    Plaintiff immediately notified Marshall of these issues.  Marshall pushed aside Plaintiff's concerns, telling Plaintiff (via email) that Marshall sent the Griess agreement only as an "example" and that an identical copy would ultimately be sent to Plaintiff for him to sign.  When Plaintiff pointed out that he was not even listed as a shareholder on the exhibit to the Griess agreement, Marshall told him a different version of the exhibit would be included in Plaintiff's copy.  But, again, after this correspondence Marshall did not provide a shareholder agreement that referred to Plaintiff or was drafted for Plaintiff's signature.

23.    Plaintiff had a telephone call with Marshall on April 14, 2020.  By this point, Plaintiff had been working for ten months without being paid.  During this call, Marshall told Plaintiff that he would be given his Intech Innovation Inc. shares fully vested, retroactive to January 1, 2020, and that the written shareholder agreement would be forthcoming.

24.     Unfortunately no written agreement was provided after the call.  Plaintiff again raised the issue with Marshall, via email, on July 6, 2020.  By this point, Plaintiff had worked for over a year without any compensation, all in reliance on the Agreement that Plaintiff was a 10% owner in Intech Innovation Inc. and ultimately would be entitled to the $125,000.00 salary once profits were generated.  But, from Plaintiff's perspective, it was time that the Agreement be fully memorialized in a shareholder agreement, as Marshall had been promising since October 2019 and as he confirmed, in writing, during the December 2019 Zoom videoconference call.  *See Ex. B.*

25.     Plaintiff and Marshall met again on July 8, 2020.  During that meeting and despite all of his prior claims that Plaintiff was 10% owner in Intech Innovation Inc., Marshall refused to acknowledge the parties' Agreement.  When Plaintiff again asked when the written shareholder agreement would be provided, Marshall told Plaintiff he was not entitled to a 10% ownership stake in Intech Innovation Inc.  Instead, Marshall now claimed he would only give Plaintiff 10,000 Intech Innovation Inc. shares, with no anti-dilution protection.  Plaintiff vehemently rejected this claim and referred Marshall to all of their prior discussions and, specifically, the December 2019 Zoom meeting where Marshall had displayed the page, in his own handwriting, reflecting Plaintiff's 10% ownership percentage in Intech Innovation Inc. and that this 10% stake equated to 13,333 of the then-issued Intech Innovation Inc. shares.  Marshall directed Plaintiff to put what he wanted in writing; Plaintiff, obviously, was frustrated by this response given that all he "wanted" was what had been promised to him for over a year.

26.     During the July 8th meeting, Marshall also admitted that he had been paying himself a salary since March 2020, even though Plaintiff still had not been paid a dime.  In fact, everyone affiliated with Intech Innovation Inc. was being paid, except for Plaintiff.  The company was generating sufficient profit for Marshall to pay himself – and for Intech Innovation Inc. to add multiple other personnel – yet Plaintiff was never paid his agreed-upon annual salary of $125,000.00.

27.     Plaintiff and Marshall met again the following day, July 9.  During this meeting, Marshall told Plaintiff that Marshall had spoken with Defendant Griess and they had decided that

Plaintiff should be terminated, effective immediately.  Marshall offered to give Plaintiff 5,000 shares in Intech Innovation Inc., while not agreeing to any type of non-dilution clause.  Plaintiff rejected this offer.

28.    It is clear Plaintiff was terminated because Marshall and Griess were tired of him insisting they honor the Agreement to provide him with a 10% equity stake in Intech Innovation Inc. and because they did not wish to pay him the agreed-upon salary.

29.    Plaintiff brought immeasurable value to Intech Innovation Inc. during the 13+ months he worked, without compensation, on Defendants' behalf and behest.  Plaintiff is a workaholic who routinely put in 10-12 hour days, working 6-7 days a week.  Plaintiff's accomplishments included, among many other things, completing key IT systems research and implementing chosen systems including the company's CRM, project management, document repository, and telephony IVR systems; achieving proficiency in operating each of the systems implemented; writing the company's Employee Manual, compensation philosophy, profit sharing/bonus programs, benefits structure for U.S. and Panama operations, job descriptions, IT "service level agreement," performance management job aid, company press releases, and marketing copy/content, among other operations oriented materials; working extensively on the company's website (and related landing pages) design, copy and imagery; partnering with the CEO extensively in sales strategy, sales meetings and related communications; analyzing all "partnership agreement" contracts, providing feedback and coordinating enhancements of targeted provisions; completing systems training related to a key client's software; participating in recruitment and onboarding initiatives; designing, developing, implementing and managing the company's "project management office" and related systems, positioning the company to effectively engage 50 simultaneous development initiatives; traveling to Iowa, Las Vegas, and Florida to attend company related events; and spending a significant amount of time self-teaching Zoho Books accounting software to prepare the company for future savings on IT systems software expenses.  Perhaps most critically, not long before he was terminated, Plaintiff secured a partnership agreement with an international cloud-based software company with over 50 million

subscribers.  This was a deal Plaintiff spent months cultivating and finalizing, with the potential to bring millions of dollars into Intech Innovation Inc.

30.     To date Plaintiff has received absolutely nothing in exchange for all of his hard work and dedication.

## COUNT I

### Breach of Contract

### (Against All Defendants)

31.     Plaintiff realleges and incorporates by reference paragraphs 7-30 as though fully set forth herein.

32.     Plaintiff and Defendants entered into a binding Agreement, whereby Plaintiff agreed to work for Intech Innovation Inc. in exchange for a 10% equity stake in  Intech Innovation Inc.  and a $125,000.00 salary retroactive to February 1, 2020, once the company began generating income.  This Agreement was confirmed on several occasions, including (but not limited to) the proforma attached hereto as **Exhibit** "**A**"; Marshall's discussions with Plaintiff during their October 30, 2019, meeting  when Marshall offered, and Plaintiff accepted, the 10% equity stake; Marshall's handwritten document attached hereto as **Exhibit** "**B**" that he shared with Plaintiff during their December 2019 Zoom videoconference call that confirmed the 10% equity stake; and the April 14, 2020, telephone call where Marshall reiterated that Plaintiff would receive his Intech Innovation Inc. shares fully vested, retroactive to January 1, 2020.  Although the majority of Plaintiff's discussions were with Marshall, Griess also was a party to the Agreement that Plaintiff was working for Intech Innovation Inc. in exchange for the 10% equity stake and the right to a $125,000.00 salary, retroactive to February 1, 2020.

33.     Plaintiff fully performed all acts, services, and conditions contemplated by the Agreement, working 50+ hour weeks for over a year on Defendants' behalf without receiving any compensation.

34.     Defendants breached the Agreement by failing and refusing to provide Plaintiff with his 10% ownership stake in Intech Innovation Inc.  Defendants further breached the

Agreement by failing and refusing to pay Plaintiff his agreed-upon salary, despite the fact the company was generating sufficient income for every other employee (including Marshall and Griess) to be paid a salary.

35.     Plaintiff has been harmed as a direct and proximate result of Defendants' breach of the Agreement, by, among other things, not receiving the 10% ownership stake in Intech Innovation Inc.; not receiving his $125,000.00 salary or other compensation for the year plus that he worked on Defendants' behalf; and forgoing other employment opportunities that would have allowed him to earn compensation comparable to the $250,000.00 annual salary he had earned at the business he managed before joining Intech Innovation Inc..

## COUNT II

### Services Rendered (Quantum Meruit)

### (Against Defendant Intech Innovation Inc.)

36.     Plaintiff realleges and incorporates by reference paragraphs 7-30 as though fully set forth herein.

37.     Plaintiff provided, and Defendant Intech Innovation Inc. assented to and received, a benefit in the form of Plaintiff's services and work performed on behalf of Intech Innovation Inc. Plaintiff performed the services as requested and gave up opportunities to work in other employment in the manner detailed herein.

38.     Plaintiff performed his services and work under circumstances where, in the ordinary course of common events, a reasonable person receiving such benefit normally would expect to pay for it.

39.     Defendant Intech Innovation Inc. did not pay Plaintiff for the services rendered.

40.     Plaintiff is entitled to the reasonable value of the services he rendered, in an amount to be proven at trial.

## COUNT III

### Unjust Enrichment

### (Against All Defendants)

41.     Plaintiff realleges and incorporates by reference paragraphs 7-30 as though fully set forth herein.

42.     Defendant Intech Innovation Inc. unfairly and unjustly benefitted from Plaintiff by receiving the full value of Plaintiff's services for over a year without having to compensate him. Defendants Marshall and Griess likewise unfairly and unjustly benefitted from Plaintiff's services because their ownership interests in Intech Innovation Inc. became far more valuable due to the services Plaintiff provided, without compensation, to the corporation.

43.     Defendants requested Plaintiff perform the services and knowingly and voluntarily accepted the benefit of these services.

44.     Under the circumstances, it would be inequitable for Defendants to retain the benefit of Plaintiff's services without paying the value thereof.

## COUNT IV

### Promissory Estoppel

### (Against All Defendants)

45.     Plaintiff realleges and incorporates by reference paragraphs 7-30 as though fully set forth herein.

46.     As alleged herein, Defendants promised Plaintiff that, if he worked for Intech Innovation Inc., he would receive a 10% equity stake in Intech Innovation Inc., a $125,000.00 salary, and other monetary and long-term benefits.

47.     Plaintiff detrimentally relied on Defendants' promise by working, without compensation, for Defendant Intech Innovation Inc. for over a year.  Defendants reasonably should have expected Plaintiff to rely on their promise.

48.     Enforcing the promise is necessary to avoid injustice to Plaintiff.  Accordingly, Plaintiff demands compensation equal to the losses he suffered in reliance on Defendants' promise,

in an amount according to proof.

## COUNT V

**Nonpayment of Minimum Wage and Overtime (Cal. Labor Code §1194)**

**(Against All Defendants)**

49.     Plaintiff realleges and incorporates by reference paragraphs 7-30 as though fully set forth herein.

50.     Plaintiff resided and worked in California throughout the time he was employed by Intech Innovation Inc..  Defendants knew that Plaintiff resided and worked from California during the period Plaintiff worked for Intech Innovation Inc..

51.     California law does not allow a person to work solely for "sweat equity." Instead, any employee working in California is entitled to be paid at least minimum wage compensation, plus overtime as applicable.  *Cal. Labor Code §1194.*

52.     Under Florida's conflict-of-law rules, California's labor law governs Plaintiff's employment claim.  Florida resolves conflict-of-law questions according to the "most significant relationship" test.  *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007).  Here, California has the most significant relationship to Plaintiff's employment because, among other reasons, Plaintiff resided and worked nearly exclusively in California during the 13+ months he worked for Intech Innovation Inc., nearly all of the discussions Plaintiff had with Defendants about his employment occurred while Plaintiff was in California, and California has a strong interest in applying its wage and overtime laws to all work within its borders.  *See, e.g., Cal. Labor Code §1171.5(a)* (California Legislature finds and declares that "[a]ll protections, rights, and remedies available under state law ... are available to all individuals ... employed, in this state."); *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1203 (Sup. Ct. Cal. 2011) (confirming that "California has, and has unambiguously asserted, a strong interest in applying its overtime law to all nonexempt workers, and all work performed, within its borders.").

53.     Plaintiff was not paid one cent of monetary compensation and certainly was not paid the California minimum wage.  Nor was he paid for overtime.

54.      Plaintiff is entitled to recover the full amount of minimum wage he earned during his 13+ months with the company, plus overtime compensation.  He is further entitled to recover accrued interest, as well as reasonable attorney's fees and costs of suit, pursuant to California Labor Code section 1194(a).

55.     Defendants Marshall and Griess were owners, directors, officers, and/or managing agents of Intech Innovation Inc. and are therefore personally liable for the above-referenced labor code violations.  *Cal. Labor Code §558.1.*

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on all counts and causes of action which entitle him to a trial before a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

A.      Compensatory damages in an amount according to proof;

B.      Back pay pursuant to California Labor Code §1194;

C.      Plaintiff's attorney's fees, costs, and expenses incurred in connection with this suit, pursuant to California Labor Code §1194(a);

D.      Pre-judgment and post-judgment interest at the legal rate; and

E.      Such other and further relief as the Court deems just and proper.

DATED: August 11, 2020

**[SIGNATURE LINE ON FOLLOWING PAGE]**

_____
LANSING C. SCRIVEN, ESQ.
Florida Bar No. 729353
LANSE SCRIVEN LAW
lanse@LanseScriven.com
3903 Northdale Blvd., Suite 100e
Tampa, FL 33624
813/940-4000 (Telephone)
813/327-4828 (Facsimile)

            --and--

ROBERT L. HILL, ESQ.
California Bar No. 24164
LAW OFFICES OF ROBERT L. HILL, APC
RHill@rlhfirm.com
5055 Avenida Encinas, Suite 100
Carlsbad, CA 92008
760/448-4425 (Telephone)
866/579-5802 (Facsimile)
 (*Pro Hac Vice* Application to Follow)
Attorneys for Plaintiff, Blair Harris